FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JUN 12  PM 2: 10

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LAWANDA L. JONES                    * CIVIL ACTION NO. 01-1925

VERSUS                              * SECTION "R", MAG. 4

MOTIVA ENTERPRISES, LLC             *

---

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes MOTIVA ENTERPRISES, L.L.C. ("Motiva"), who moves for summary judgment for the purpose of obtaining the dismissal of plaintiff's tort suit on the basis that plaintiff is its statutory employee and, as such, her exclusive remedy is under the Workers' Compensation Act and, relative thereto, respectfully submits:

- 1 -



1.

Motiva distills medium to heavy crude oils to produce gasoline, kerosene, aviation fuel, diesel fuel and some light lubricants at its refinery in Convent, Louisiana.[1]  This process regularly entails flow through the high pressure hydrogen-cracking operation unit ("H-Oil Unit").[2]

2.

On or about June 28, 2000, Motiva entered into a written contract with Conex of Louisiana, Inc., for the performance of regular maintenance work on the H-Oil Unit at its refinery in Convent, Louisiana.[3]  This work, which is required to be conducted every one and a half to two years in order to maintain production and efficiency at the refinery, involved opening up certain of the unit's vessels to remove debris, decoking certain heaters, and conducting other minor maintenance work in the unit.[4]

---

[1]See March 27, 2002 deposition of H. T. Rea, P.E., area maintenance supervisor at Motiva responsible for routine maintenance such as the clean-out of the H-Oil Unit in August of 2000 attached as Exhibit "A" at p.10, lines 4-14.

[2]Exhibit "A" at p.15, lines 2-9.

[3]See Affidavit of H.T. Rea, P.E., area maintenance supervisor at Motiva responsible for routine maintenance such as the cleanout of the H-Oil Unit in August of 2000 attached as Exhibit "B" at ¶¶ 9-11, 12 which authenticates and incorporates the contract attached to this Affidavit; see also, Exhibit "A" at pp. 13, 25-27.

[4]Exhibit "A" at pp. 14-16; and Exhibit "B" at ¶¶ 7-8.

3.

The obligations of Conex of Louisiana, Inc., under the contract with Motiva, were assigned, with the consent of Motiva, to Conex International Corporation ("Conex") on August 1, 2000.

4.

The contract between Motiva and Conex specifically provided that Motiva was to be considered the statutory employer; that any Conex employee was to be considered the statutory employee of Motiva; and that the statutory employee's rights and remedies were limited to those under the Louisiana Workers' Compensation Act.[5]

5.

Plaintiff, LaWanda L. Jones, was a direct employee of Conex International Corporation in August 2000.[6] She was injured on August 18, 2000, while conducting the clean-out maintenance work being performed on the H-Oil unit by Conex at Motiva's refinery in Convent, Louisiana.

6.

In light of the statutory employer provision contained in the contract, La. R.S. 23:1061(A)(3) establishes a rebuttable presumption that statutory employment exists between plaintiff, LaWanda Jones, a Conex employee, and Motiva, which can be rebutted

---

[5]*See* Contract attached to Exhibit "B" at tab 1.

[6]*See* plaintiff's W-2 form attached as Exhibit "C;" *see also* plaintiff's Original Complaint attached as Exhibit "D."

"only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products or services."[7]

7.

The work being performed in connection with the maintenance to the H-Oil Unit was an integral part of the business of Motiva and directly affected the efficiency of its operations. In similar circumstances, such regular maintenance work conducted at an oil refinery has been determined to be an integral part of the oil refinery's trade, business or occupation and essential to its continued operation.[8]

8.

Plaintiff's exclusive remedy against Motiva, her statutory employer, is under the Workers' Compensation Act. In fact, plaintiff has received workers' compensation recovery in connection with this incident.

9.

Plaintiff has filed a tort suit against Motiva in which she has asserted allegations of negligence. In its responsive pleadings, Motiva has pled protections of compensation law and the statutory employer defense.

---

[7] La. R. S. 23:1061(A)(3).

[8] *See, e.g., Harris v. Murphy Oil, U.S.A., Inc.*, 980 F.2d 991 (5th Cir. 1992).

- 4 -

10.

There being no genuine issue of material fact regarding plaintiff's employment and the nature of the work conducted at Motiva and being entitled by law to immunity from tort liability, Motiva's Motion for Summary Judgment should be granted and plaintiff's tort suit dismissed.

WHEREFORE, defendant MOTIVA ENTERPRISES, L.L.C. respectfully prays that its Motion be granted and that judgment of dismissal be entered as prayed for.

Respectfully submitted,

KEOGH, COX & WILSON, LTD.
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, LA 70821
Telephone: (225) 383-3796

BY: _____
JOHN P. WOLFF, III, T.A. (#14504)
COLLIN J. LEBLANC (#24519)
KYLE A. FERACHI (#27458)

- 5 -

# CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing to all counsel of record by placing same in the United States mail, postage prepaid, and properly addressed.

Baton Rouge, Louisiana, this _10_ day of _June_____, 2002.

_____

JOHN P. WOLFF, III
COLLIN J. LEBLANC
KYLE A. FERACHI

- 6 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LAWANDA L. JONES                    * CIVIL ACTION NO. 01-1925

VERSUS                              * SECTION "R," MAG. 4

MOTIVA ENTERPRISES, LLC             *

# ORDER

Considering the foregoing Motion for Summary Judgment:

IT IS ORDERED that the Motion for Summary Judgment of MOTIVA ENTERPRISES, LLC is hereby GRANTED.

IT IS FURTHER ORDERED that all claims against MOTIVA ENTERPRISES, LLC in the above-captioned matter is hereby DISMISSED with prejudice, at plaintiff's cost.

New Orleans, Louisiana, this _____ day of _____, 2002.


_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LAWANDA L. JONES                    * CIVIL ACTION NO. 01-1925

VERSUS                              * SECTION "R", MAG. 4

MOTIVA ENTERPRISES, LLC             *

# MEMORANDUM IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Motiva Enterprises, L.L.C. ("Motiva") has filed this Motion for Summary Judgment to obtain dismissal of the suit asserted against it by plaintiff, LaWanda L. Jones ("Jones"), on the basis that it is the statutory employer of Ms. Jones and, as such, her exclusive remedy is under the Louisiana Workers' Compensation Act.

## BRIEF STATEMENT OF FACTS

Motiva distills medium to heavy crude oils to produce gasoline, kerosene, aviation fuel, diesel fuel and some light lubricants at its refinery in Convent, Louisiana.[1] The refining

---

[1]*See* Exhibit "A" at p. 10, lines 4-14 attached to Motiva's Motion for Summary Judgment. *See also*, Exhibit "B" at ¶ 5 attached to Motiva's Motion for Summary Judgment.

process at its Convent refinery regularly entails flow through its high pressure hydrogen-cracking operation unit ("H-Oil Unit").[2] The H-Oil Unit must be cleaned out every one and a half to two years in order to keep the refinery in operation.[3] Specifically, in this regard, Mr. Rea testified:

> Q.   How often do you have to go through the clean-out process that was the subject of this particular work?
>
> A.   We look at approximately every year and a half to two years.
>
> Q.   You indicated earlier that there is a more comprehensive procedure that's occasionally followed. Can you explain the difference between the clean-out work that was going on here and the more extensive work?
>
> A.   The clean-out work is very specific in order to remove debris to debris and to decoke the heaters to allow the unit to run until a turnaround.[4]

Cleaning out the H-Oil Unit involves opening up some of the vessels in the unit, decoking some heaters and conducting other maintenance work.[5] As explained by Mr. Rea,

---

[2]Exhibit "A" at p.15, lines 2-9 and Exhibit "B" at ¶ 6 attached to Motiva's Motion for Summary Judgment.

[3]According to Mr. Rea, a "clean-out" is similar to turn-around maintenance, but is smaller in scale than turn around maintenance, does not require the entire refinery to be shut down when it is conducted, and must be done more frequently than turn-around maintenance. *See* Exhibit "A" at pp. 14-16 attached to Motiva's Motion for Summary Judgment.

[4]Exhibit "A" at p. 15, line 22 through p. 16, line 9 attached to Motiva's Motion for Summary Judgment.

[5]Exhibit "A" at p. 14 attached to Motiva's Motion for Summary Judgment.

- 2 -

failure to decoke the heaters would cause inefficiencies; failure to remove the debris from

the vessels would ultimately cause the vessels to silt up and the production process to halt.

> [The H-Oil] unit may be perceived as being the last unit in a continuous process. All of the heavy materials that other units can't digest or can't break down are sent to H-Oil. So by the time we get to the H-Oil, we have some very viscous asphaltene-type materials, and with the high temperatures that we have they will actually form coke, coke being very similar to coal. So these coke particles will accumulate in the bottoms of vessels and they will gradually silt up the vessel to the point where you won't be able to draw liquids off anymore in which case you have to have a shut down to clean that material out.[6]

On or about June 28, 2000, Motiva entered into a written contract with Conex of

Louisiana, Inc., for the performance of work associated with the "clean-out" of the H-Oil

unit, which contract had an effective date of July 5, 2000.[7]  On or about August 1, 2000,

Motiva submitted a revision to the written contract, which was accepted on August 7, 2000,

whereby the obligations of Conex of Louisiana, Inc., was assigned to Conex International

Corporation ("Conex") and the statutory employer provision was revised.  As revised, the

contract provided in pertinent part:

> In performing the work covered by this contract, [Conex] shall act as an independent contractor, maintaining complete control over and having full responsibility for its employees and the performance of its subcontractors. [Motiva] and [Conex] expressly agree that *while [Conex] and any of its employees,*

---

[6]Exhibit "A" at p. 17, lines 9-23 attached to Motiva's Motion for Summary Judgment.

[7]*See* Exhibit "B" at ¶ 14 attached to Motiva's Motion for Summary Judgment which authenticates and incorporates the contract attached to this Affidavit; Exhibit "A" at pp. 13, 25-27 attached to Motiva's Motion for Summary Judgment.

- 3 -

> *agents, or subcontractors are performing work under this contract that [Motiva] or any of its subsidiaries or affiliates shall be considered a Statutory Employer* within the meaning set forth in La. R.S. 23:1061 and *those employees, agents and subcontractors of [Conex] (hereinafter called "Statutory Employee") shall be considered a Statutory Employee* as the meaning is set forth in La. R.S. 23:1061 and *those Statutory Employees and their personal representatives, dependents or relations shall be limited to the rights and remedies set forth in La. R.S. 23:1032 which limits their rights and remedies to those granted under this section and the Workers' Compensation Act.*[8]  [Emphasis added]

In August of 2000, the H-Oil unit at the Motiva Oil Refinery in Convent, Louisiana, was undergoing a regularly scheduled maintenance "cleanout."  This work was part of ongoing maintenance at the plant, and was required to be conducted every one and a half to two years in order to maintain the efficient operation of the plant.[9]  In connection with this maintenance work, Conex was required to temporarily re-configure the piping at Motiva in order to remove coke from the tubes of certain of the unit's heaters through a "pigging" and a "proof burn" procedure.[10]

On August 18, 2000, plaintiff, a direct employee of Conex, was injured while a steam-air proof burn was being conducted (which is part of the process used in decoking the

---

[8]*See* August 1, 2000 contract attached to Exhibit "B" at tab 1 of Motiva's Motion for Summary Judgment.

[9]Exhibit "A" at pp. 15-16, 61 and Exhibit "B" at ¶¶ 7-8 attached to Motiva's Motion for Summary Judgment.

[10]Exhibit "B" at ¶ 14 attached to Motiva's Motion for Summary Judgment.

- 4 -

heater tubes in the H-Oil unit).[11]   Plaintiff thereafter received workers' compensation benefits in connection with this injury.[12]   Plaintiff thereafter filed this tort suit wherein she asserts a cause of action in negligence against Motiva.

## LEGAL AUTHORITIES AND ARGUMENT

Under the Louisiana Workers' Compensation Act, workers' compensation benefits are the exclusive remedy of an employee against the employer or any "principal," as statutory employer, for any work-related injury, compensable sickness, or disease.[13]   As used in the Act, the term "principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."[14]   Work is considered to be part of the principal's trade, business or occupation "if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."[15]   Because the regular clean-out maintenance of the H-Oil Unit is an integral part of Motiva's ability to maintain the efficient operation of its refinery, the maintenance work is part of Motiva's trade, business, or

---

[11]Exhibit "A" at p. 39 attached to Motiva's Motion for Summary Judgment.

[12]*See* February 7, 2002 deposition of Lawanda L. Jones (Keller) attached as Exhibit "1" at pp. 115, 137.

[13]La. R.S. 23:1032(A)(1).

[14]La. R.S. 23:1032(A)(b)(2).

[15]La. R.S. 23:1061(A)(1).

occupation as an oil refinery. Thus, Motiva is the statutory employer of plaintiff, Lawanda Jones and is immune from tort liability.

### A.    Contractual Provision Gives Rise to Presumption of Statutory Employment.

La. R.S. 23:1061 was amended in 1997 to include a presumption of statutory employment whenever there is, as exists in this instance between Motiva and Conex, a written contract between the principal and the direct employer of plaintiff.[16]   This amendment became effective on June 17, 1997. Because the accident in this case occurred on August 18, 2000, the amendment applies to define plaintiff's relationship to Motiva. As amended, the statute in pertinent part provides:

> When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees.   This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products or services.[17]

The contract between Motiva and Conex, as quoted above, expressly provides: (1) that Motiva *shall be considered the statutory employer* of Conex employees; (2) that any

---

[16]In addition to adding the presumption of statutory employment, the amendment also legislatively overruled the statutory employer tests as set forth in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La. 1986) and *Kirkland v. Riverwood International USA, Inc.*, 95-1830 (La. 9/13/96), 681 So.2d 329. *See Johnson v. Tennessee Gas Pipeline Co.*, 99 F. Supp.2d 755, 757 n.2 (E.D. La. 2000), *citing Jordan v. Central Management Co.*, 99-0748 (La. App. 3 Cir. 10/13/99), 745 So.2d 116, 122, *writ denied* 99-3231 (La. 1/14/00), 753 So.2d 220.

[17]La. R.S. 23:1061 (A)(3).

Conex employee *shall be considered a statutory employee* of Motiva; and (3) provides for

a *statutory employment* relationship to exist by limiting the rights and remedies of such

statutory employees to those set forth in the Workers' Compensation Act.[18] The production

of the contract between Motiva and Conex with its statutory employer provisions makes

applicable the statutory presumption and constitutes prima facie proof that a statutory

employment relationship exists between plaintiff and Motiva.  Plaintiff can only overcome

this presumption of statutory employment by showing that the clean-out work on the H-Oil

unit at the Convent refinery was not "an integral part of" or "essential" to the ability of

Motiva to generate its goods, products or services.

The deposition testimony and Affidavit of Mr. Rea shows that plaintiff will be unable

to rebut the presumption of statutory employment.  As set forth therein, Mr. Rea establishes

that the cleanout work in the H-Oil unit was required to be done every one and a half to two

years and was necessary to the refinery's continued efficient operation.[19]  Without such

regular maintenance work, the refinery would grow less and less efficient and eventually

jeopardize the continued operation of the refinery.[20]  Thus, as this testimony establishes, the

clean-out work conducted by Conex employees at the Motiva refinery at the time of

---

[18]*See* Exhibit "B" at tab 1 attached to Motiva's Motion for Summary Judgment.

[19]Exhibit "A" at pp. 14-16 and Exhibit "B" at ¶ 7 attached to Motiva's Motion for Summary Judgment.

[20]Exhibit "A" at p. 17 and Exhibit "B" at ¶ 8 attached to Motiva's Motion for Summary Judgment.

- 7 -

plaintiff's accident was both integral and essential to the ability of Motiva to generate its petroleum products.

Inasmuch as plaintiff is unable to make a sufficient factual showing which evidences her ability to rebut the statutory employment presumption, or to show the existence of any genuine factual dispute over the fact that the work she performed in cleaning-out the H-Oil Unit was part of Motiva's trade, business or occupation, this motion should be granted and plaintiff's suit against Motiva be dismissed.

### B.    Maintenance Work on the H-Oil Unit was an Integral Part of Motiva's Trade, Business and Occupation.

Even without the benefit of the presumption of statutory employment, numerous courts have previously held under similar facts that the performance of turn-around maintenance work at a principal's oil refinery or other manufacturing plant is an integral part of, and/or essential to the principal's operations. Given the factual similarities between this case and the cases discussed below, the same result should be had in this case.

In *Harris v. Murphy Oil USA*,[21] the oil refiner (Murphy Oil) had contracted with VIP International, Inc. ("VIP") to conduct turn around maintenance on an operating unit at its refinery. The turn around work, which had to be conducted every three to five years, consisted of vacuuming catalyst out of a reactor, screening it and then reinstalling it into the reactor.[22] While conducting such work, plaintiff, who was a direct employee of VIP,

[21]980 F.2d 991 (5th Cir. 1992).

[22]*Id.* at 992.

- 8 -

slipped and fell.  The defendant oil refiner moved for summary judgment on the basis that it was the statutory employer of the plaintiff and, thus, immune from tort immunity.

The court stated that the proper test to use in determining whether VIP's work was part of Murphy Oil's trade, business or occupation was the "integral relation" test.  Under the integral relation test, a principal is considered a statutory employer if the contractor was engaged in work that was an integral part of the principal's trade, business or occupation.[23] The *Harris* Court instructed that a court may not consider whether the work performed by the contractor was specialized or routine, customary, ordinary or unusual when it uses the integral relation test.[24]

Using the integral relation test, the court determined that the predictable and periodic maintenance being conducted by plaintiff at the time of his injury was necessary for the on-going operation of the refinery, that the refinery could not function in an economical and profitable fashion without such periodic refurbishment, and that without such refurbishment the refinery could eventually completely cease to function.[25]  Accordingly, the court determined the turn-around maintenance work was integral to the oil refiner's business.  As such, the oil refiner properly was afforded the status of statutory employer of the injured

---

[23]*See Thompson v. Georgia Pacific Corp.*, 993 F.2d 1166, 1168 (5th Cir. 1993), *citing Thibodaux v. Sun Oil Co.*, 218 La. 453, 49 So.2d 852, 854 (1950).

[24]*Harris, supra,* 980 F.2d at 993.

[25]*Id.* at 992.

plaintiff and the District Court's granting of the oil refiner's motion for summary judgment and dismissing plaintiff's suit was affirmed.

Similarly, in *Salmon v. Exxon Corp.*,[26] Exxon had contracted with UMC of Louisiana, Inc. ("UMC") for UMC to perform the mechanical portion of turn around maintenance on the OXO unit at its chemical plant. UMC was subsequently dissolved and its obligations under the contract with Exxon was assigned, with Exxon's consent, to J.E. Merit Constructors, Inc., the direct employer of the plaintiff. At some point thereafter, the plaintiff was injured while hydro-testing a segment of the piping system on the OXO unit (a task performed as part of the turn-around maintenance on that unit). The Court cited to numerous decisions in which similar turn-around maintenance or other repair work conducted by a contractor at a principal's business was found to be within the principal's trade, business, or occupation.[27] In light of such jurisprudence, the court determined that the turn around work performed on the OXO unit under the contract was within Exxon's trade,

---

[26]824 F. Supp. 81 (M.D. La. 1993).

[27]Specifically, it cited to *Harris, supra; Seeney v. Citgo Petroleum Corp.*, 848 F.2d 664 (5th Cir. 1988) (where plaintiff, a direct employee of Payne & Keller, injured in an explosion while conducting turnaround maintenance work at Citgo's refinery was determined to be statutory employee of Citgo); *Duhon v. Conoco, Inc.*, 795 F. Supp. 189 (W.D. La. 1992) (Conoco was statutory employer of plaintiff, a direct employee of an independent contractor performing turnaround maintenance work); *Boudreaux v. Freeport Chemical Co.*, 576 So.2d 615 (La. App. 4th Cir. 1991) (plaintiff, a direct employee of CFI, was defendant's statutory employee since the turnaround maintenance work was an integral part of Freeport's trade, business or occupation); *Salsbury v. Hood Industries, Inc.*, 982 F.2d 912 (5th Cir. 1993) (plaintiff was defendant's statutory employee as replacement of old equipment was an integral part of its sawmill business); and *Becker v. Chevron Chemical Co.*, 983 F.2d 44 (5th Cir. 1993) (plaintiff, a direct employee of Marec, conducting structural fitting work on overhead walkway at Chevron's plant, was statutory employee of Chevron).

business or occupation.[28] It granted Exxon's Motion for Summary Judgment and dismissed plaintiff's suit.[29]

Under this same reasoning and in similar circumstances as exist in this case, the performance by contractor employees of period maintenance has been determined to be within the principal's trade, business or occupation. For example, maintenance to a filter and pump system which was required to be conducted every one to four years,[30] replacement of reactor coils,[31] removal and reinstallation of piping in furnaces clogged with coke,[32] and

_____

[28]*Salmon, supra*, 824 F. Supp. at 86.

[29]Just as in *Salmon*, where the assignment of the contract had no effect on the court's decision, the fact that the contract was assigned to Conex is not material to this motion. The *Salmon* court also rejected plaintiff's argument that the identification of J. E. Merit as an independent contractor in the contract required a different result. Finding that contention to be without merit, the *Salmon* Court stated: "Regardless of the language of the contract, the defendant cannot relieve itself of the its statutory obligation to provide worker's compensation coverage. The compensation remedy is exclusive and cannot be waived by any contract, rule, regulation, or device. An independent contractor who performs work which is part of the principal's trade, business, or occupation is covered by the Worker's Compensation Act." *Id.* at 86-87. (citations omitted.)

[30]*Hester v. Pioneer Chlor-Alkali Co.,* 955 F. Supp. 656, 659 (M. D. La. 1996) ("[F]or years, state and federal courts have consistently found that [such] maintenance and general repair work is part of a principal's trade, business and occupation"). The fact that this case was decided using the more stringent test enumerated in *Berry, supra*, is immaterial to Motiva's motion.

[31]*Hodges v. Exxon Corporation,* 563 F. Supp. 667, 672 ( M.D. La. 1983), *affirmed* 727 F. 2d 450 (5th Cir. 1984) ("[T]he court finds as a matter of fact and law, that Exxon is entitled to a summary judgment in this case. It is clear that the work the plaintiff and his employer were performing at the time of plaintiff's injury was an integral part of Exxon's work. Thus, Exxon was clearly a statutory employer of the plaintiff.").

[32]*Billings v. Valley Systems, Inc.*, 1996 U.S. Dist. LEXIS 3489, *3 (E.D. La. 1996) ("[C]learing the pipe was integral to the continued operation of Shell Oil's coker unit. Indeed, without the maintenance, Shell's entire refinery would eventually have to cease its operations. As such, application of the integral relation test leads to the conclusion that Brown & Root was performing work that was part of Shell's trade, business or occupation.").

- 11 -

the erection of scaffolding in connection with the repair of a recovery boiler during a mill turn-around,[33] have all been determined to be within the trade, business or occupation of the principal. The same result is warranted under the facts in the case now before the court.

In applying the integral relation test, this Honorable Court must determine whether the contract work being performed by Conex is "integral or essential" to Motiva's trade, business or occupation. In light of this jurisprudence and the circumstances existing in this case, it should be determined that the clean-out work conducted by plaintiff of the H-Oil unit at Motiva's refinery in Convent, Louisiana, which was periodic maintenance required to be conducted every one and a half to two years, was necessary to the continued operation of the refinery and that, as such, plaintiff's work was part of Motiva's trade, business or occupation. Louisiana law thus entitles Motiva to be recognized as plaintiff's statutory employer, plaintiff's rights and remedies to be limited to those provided under the Workers' Compensation Act, and Motiva to be found immune from tort liability. Motiva's motion for summary judgment should, therefore, be granted and plaintiff's tort suit against it be dismissed.

---

[33]*Thompson, supra.*, 993 F.2d at 1169 ("[M]aintenance and refurbishing involved in the [recovery boiler's] turn around ... was required for the continued safe operation of the boiler. ... Under the reasoning adopted in *Harris*, it seems clear the [plaintiff's] work was a part of the 'trade, business, or occupation' of Georgia Pacific's paper mill.").

**C.**     **Motiva is Entitled to Have its Motion for Summary Judgment Granted.**

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[34]  When the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[35]  The non-moving party cannot satisfy its summary judgment burden with conclusory allegations, unsubstantiated assertions, or with only a scintilla of evidence.[36]

Under these well established rules governing the granting of motions for summary judgment, numerous courts have previously granted motions for summary judgment involving the same issue as is presented in this case.  Mr. Rea's deposition testimony and Affidavit establish that the work conducted by plaintiff related to the clean-out of the H-Oil unit at Motiva's refinery, that such maintenance was required to be conducted every one and a half to two years, and that the refinery could not maintain efficient operations without such maintenance being performed.  In light of the jurisprudence cited and discussed above,

---

[34]F.R.C.P. Rule 56(c).  In this regard, an issue is "genuine" only if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and a fact is "material" only if its resolution in favor of one party might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[35]*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. CT. 2548, 2252, 91 L.Ed.2d 265 (1986).

[36]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5 Cir. 1994) (en banc).

- 13 -

this type of periodic maintenance is properly determined to be within Motiva's trade, business and occupation. This conclusion cannot be factually disputed.

Motiva, therefore, is entitled by law to a judgment finding that it is plaintiff's statutory employer, limiting plaintiff's rights and remedies to those under the Workers' Compensation Act, and dismissing the tort suit asserted against it. In the absence of any genuine issues of material fact and given its entitlement to judgment as a matter of law, F.R.C.P. 56(c) mandates that Motiva's motion for summary judgment be granted.

## CONCLUSION

Motiva is the statutory employer of plaintiff as the contract between it and plaintiff's direct employer contained a statutory employer provision and the work being performed under the contract was integral to Motiva's oil refinery business. Accordingly, defendant's Motion for Summary Judgment should be granted and plaintiff's demand should be dismissed with prejudice.

Respectfully submitted,

KEOGH, COX & WILSON, LTD.
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, LA 70821
Telephone: (225) 383-3796


BY: _____
JOHN P. WOLFF, III, A. (#14504)
COLLIN J. LEBLANC (#24519)
KYLE A. FERACHI (#27458)

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing to all counsel of record by placing same in the United States mail, postage prepaid, and properly addressed.

Baton Rouge, Louisiana, this _10_ day of _June_____, 2002.

_____
JOHN P. WOLFF, III
COLLIN J. LEBLANC
KYLE A. FERACHI

- 15 -

1

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF LOUISIANA

3   LAWANDA L. JONES              *
                                  *
4   VS.                           *   C. A. NO. 01-1925
                                  *   SECTION "R", MAG.4
5   MOTIVA ENTERPRISES, LLC       *
    *   *   *   *   *   *   *   *   *   *

6

7

8
                        DEPOSITION OF
9               LAWANDA LATRICIA KELLER

10

11

12

13                    February 7, 2002
              Offices of Seale, Stover & Bisbey
14                  950 North Wheeler
                      Jasper, Texas
15

16

17              ORIGINAL

18

19
    Reported by:
20
                    Patsy J. Jagneaux - CSR
21                     Texas CSR No. 3911
                   Jan Girouard & Associates
22                  550 Fannin, Suite 1125
                    Beaumont, Texas  77701
23                     (409) 832-2721

24

25

EXHIBIT
/

115

12:49 PM 1    A.    They wouldn't pay for it anymore.  They said I

2    didn't need it.

3    Q.    Who is "they"?

4    A.    Risko.

12:49 PM 5    Q.    That was your workers' comp?

6    A.    Yes, sir.

7    Q.    So, you did receive comp from the injury?

8    A.    Yes, sir.

9    Q.    Was it your understanding that was the

12:49 PM 10   compensation -- the workers' compensation of Conex?

11   A.    Yes, sir.

12   Q.    Since September of 2001 what -- have you made any

13   effort to get any therapy?

14   A.    Yes, sir, 'cause, I mean, what -- the last time I

12:50 PM 15  went to Galveston, they said that I needed it -- I forgot

16   for how long -- but they didn't approve it.  They denied

17   it, the insurance company.

18   Q.    That was three months ago?

19   A.    Yes, sir.

12:50 PM 20  Q.    Okay.  On this visit did they tell you that you

21   need therapy or not?

22   A.    Yes, sir.  They said that they would contact

23   them, you know, to see why they said I don't need it.

24   Q.    Who told you that?

12:50 PM 25  A.    Dr. Sanford.

137

01:23 PM 1     Q.   Do you still receive workers' compensation

2   payments?

3     A.   Yes, sir.

4     Q.   How much do you receive a month?

01:23 PM 5     A.   Eleven thirty-nine.

6     Q.   Do you know how long those will continue?

7     A.   No, sir.

8     Q.   Okay.  And that's the money you live off of right

9   now?

01:23 PM 10     A.   Yes, sir.

11     Q.   Do you receive any other type of monthly

12   benefits?

13     A.   No, sir.

14     Q.   Do you know Heath Kelley?

01:24 PM 15     A.   He was one of the guys in the hole I think.

16     Q.   Do you know if he was hurt one way or another?

17     A.   I have no idea.

18     Q.   You didn't know him before Convent?

19     A.   No, sir.

01:24 PM 20     Q.   Your two primary doctors at the Baton Rouge burn

21   unit were Patin and Mencer?

22     A.   Yes, sir.

23     Q.   The third operation performed on you, was that by

24   Dr. Binur?

01:24 PM 25     A.   Yes, sir.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LAWANDA L. JONES                    * CIVIL ACTION NO. 01-1925

VERSUS                              * SECTION "R," MAG. 4

MOTIVA ENTERPRISES, LLC             *

---

## STATEMENT OF UNCONTESTED FACTS

NOW INTO COURT, through undersigned counsel, comes MOTIVA ENTERPRISES, LLC ("Motiva") who submits the following statement of uncontested facts:

1. Motiva has been the owner and operator of the Motiva Oil Refinery in Convent, Louisiana since sometime in 1998.[1]

2. The business of Motiva at this location is the refinement of petroleum.[2]

---

[1]*See* Exhibit "A" at p. 9, line 13 through p. 23, line 1 attached to Motiva's Motion for Summary Judgment.

[2]Exhibit "A" at p. 10, lines 6-14 attached to Motiva's Motion for Summary Judgment.

3.      The H-Oil Unit located at the Motiva oil refinery in Convent, Louisiana, is a part of the refining process of petroleum product.[3]

4.      Cleanout maintenance of the H-Oil Unit must be conducted every one and a half to two years in order to remove debris and coke build-up.[4]

5.      Without the regular performance of this maintenance work, the efficiency of the operations of Motiva at its refinery in Convent, Louisiana,  would be drastically reduced, and a failure to conduct such performance could ultimately lead to its inability to operate.[5]

6.      On June 28, 2000, Motiva entered into a written contract with Conex of Louisiana, Inc., for the performance of this maintenance work.[6]

7.      On August 1, 2000, Motiva agreed to the assignment of those contractual obligations from Conex of Louisiana, Inc., to Conex International Corporation, and revised the contract to include the following statutory employer provision:

> In performing the work covered by this contract, [Conex] shall act as an independent contractor, maintaining complete control over and having full responsibility for its employees and the performance of its subcontractors. [Motiva] and [Conex] expressly agree that while [Conex] and any of its employees, agents, or subcontractors are performing work under this contract that [Motiva] or any of its subsidiaries or affiliates

---

[3]Exhibit "A" at p. 15, lines 2-9 attached to Motiva's Motion for Summary Judgment.

[4]Exhibit "A" at p. 15, line 22 through p. 16, line 1; p. 61, lines 17 through p. 62, line 5 and Exhibit "B" at ¶ 7 attached to Motiva's Motion for Summary Judgment.

[5]Exhibit "A"  at p. 17, lines 9-23 and Exhibit "B" at ¶ 8 attached to Motiva's Motion for Summary Judgment.

[6]*See* contract attached to Exhibit "B" of Motiva's Motion for Summary Judgment.

- 2 -

shall be considered a Statutory Employer within the meaning set forth in La. R.S. 23:1061 and those employees, agents and subcontractors of [Conex] (hereinafter called "Statutory Employee") shall be considered a Statutory Employee as the meaning is set forth in La. R.S. 23:1061 and those Statutory Employees and their personal representatives, dependents or relations shall be limited to the rights and remedies set forth in La. R.S. 23:1032 which limits their rights and remedies to those granted under this section and the Workers' Compensation Act.[7]

8.   The assignment and revision to the contract was agreed to and accepted by Conex International Corporation on August 7, 2000.[8]

9.   The contract pertinent to this case is the one which has been identified as Contract No. COR-0100, a true copy of which is attached to H.T. Rea's affidavit.[9]

10.   In August of 2000, the H-Oil Unit at the Motiva Oil Refinery in Convent, Louisiana was undergoing a regularly scheduled maintenance "cleanout," which project was to take approximately a month.[10]

---

[7]*See* Exhibit "B" at tab 1 attached to Motiva's Motion for Summary Judgment.

[8]*See* August 7, 2000 acceptance and agreement to contract revision attached to Exhibit "B" of Motiva's Motion for Summary Judgment.

[9]*See* Exhibit "A" p. 26, lines 10-12 and *see* contract attached to Exhibit "B" of Motiva's Motion for Summary Judgment.

[10]Exhibit "A" at p. 28, line 7-16; p. 31, lines 8-10 attached to Motiva's Motion for Summary Judgment.

11.    The work conducted by Conex International Corporation relative to this scheduled maintenance clean-out was to temporarily configure the piping in the H-Oil Unit  so that debris within the piping could be "pigged-out," a "proof burn" conducted, and to conduct and/or oversee the debris removal process.[11]

12.    Conex International Corporation was the plaintiff's payroll employer.[12]

13.    The plaintiff was injured on August 18, 2000, while involved in this clean out work.[13]

14.    The plaintiff has received workers' compensation benefits relative to this incident.[14]

Respectfully submitted,

KEOGH, COX & WILSON, LTD.
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, LA 70821
Telephone: (225) 383-3796


BY:   _____
      JOHN P. WOLFF, III, T.A. (#14504)
      COLLIN J. LEBLANC (#24519)
      KYLE A. FERACHI (#27458)

---

[11]Exhibit "B" at ¶ 14 attached to Motiva's Motion for Summary Judgment.

[12]*See also* plaintiff's W-2 form attached as Exhibit "C" and plaintiff's Original Complaint attached as Exhibit "D" to Motiva's Motion for Summary Judgment

[13]Exhibit "B" at ¶ 15 attached to Motiva's Motion for Summary Judgment.

[14]*See* Exhibit "1" at pp. 115, 137 attached to Motiva's Memorandum in Support of its Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing to all counsel of record by placing same in the United States mail, postage prepaid, and properly addressed.

Baton Rouge, Louisiana, this __10__ day of __June_____, 2002.

_____
JOHN P. WOLFF, III
COLLIN J. LEBLANC
KYLE A. FERACHI

- 5 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LAWANDA L. JONES                    * CIVIL ACTION NO. 01-1925

VERSUS                              * SECTION "R", MAG. 4

MOTIVA ENTERPRISES, LLC             *

---

# NOTICE OF HEARING

TO:   LAWANDA L. JONES
      through her attorneys of record,
      Mr. Blair A. Bisbey
      SEALE, STOVER & BISBEY
      950 N. Wheeler Street
      Post Office Box 480
      Jasper, TX 75951

**PLEASE TAKE NOTICE** that defendant, MOTIVA ENTERPRISES, L.L.C., will

bring the foregoing Motion for Summary Judgment for hearing before the Honorable Sarah

- 1 -

S. Vance, United States District Judge, Eastern District of Louisiana, on the 10th day of July,

2002, at 10:00 o'clock A.M., or as soon thereafter as counsel may be heard.

You are invited to participate.

Respectfully submitted,

KEOGH, COX & WILSON, LTD.
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, LA 70821
Telephone: (225) 383-3796

BY: _____
JOHN P. WOLFF, III, T.A. (#14504)
COLLIN J. LEBLANC (#24519)
KYLE A. FERACHI (#27458)

# CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing to all counsel

of record by placing same in the United States mail, postage prepaid, and properly

addressed.

Baton Rouge, Louisiana, this ___11th___ day of ___June___, 2002.

_____
JOHN P. WOLFF III
COLLIN J. LEBLANC
KYLE A. FERACHI

- 2 -

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED